UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELO VELAZQUEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GENERAL MOTORS LLC,<br><br>　　　　　Defendant. | No. 2:24-cv-01519-DAD-CSK<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS CERTAIN CLAIMS<br><br>(Doc. No. 6) |

This matter is before the court on defendant's motion to dismiss certain claims brought by plaintiff in this action. (Doc. No. 6.) On July 9, 2024, the pending motion was taken under submission to be decided on the papers pursuant to Local Rule 230(g). (Doc. No. 11.) For the reasons explained below, the court will grant defendant's motion to dismiss.

**BACKGROUND**

Plaintiff Angelo Velazquez brings this automobile "lemon law" and fraud action against defendant General Motors LLC ("defendant" or "GM"), alleging the following in his complaint. On May 21, 2022, plaintiff acquired a new 2022 Chevrolet Bolt ("the subject vehicle") from "Maita Chevrolet, an authorized dealer and agent of [defendant GM]." (Doc. No. 1-1 at 3, ¶¶ 3– 5.) As part of that transaction, GM "issued an express warranty which would only be issued by [GM] as a result of the sale of the vehicle." (*Id.* at ¶ 5.) According to plaintiff, the sale of the subject vehicle by a GM dealership, coupled with the issuance of the express warranty, created a

1

transactional and contractual relationship between GM and plaintiff, such that the dealership is an agent of GM for the purpose of the transaction. (*Id.*) GM does "not sell vehicles directly to members of the general public." (*Id.*)

In October 2015, GM touted the Bolt as an affordable, long range vehicle. (*Id.* at ¶ 18.) In a January 2016 press release, GM represented that the Bolt would have a battery range over 200 miles because the battery has improved thermal operating performance. (*Id.* at ¶ 19.) In December 2016, GM first became aware of issues with the battery and energy management related issues in the Bolt and instituted a battery exchange program to replace defective batteries. (*Id.* at ¶ 20.) Despite this knowledge, GM began running commercials in January 2017 featuring the range of the battery in the Bolt, a "long range" and "affordable" vehicle. (*Id.* at ¶ 21.) These marketing statements were "echoed by GM's dealership personnel at the time of sale who assured plaintiff that the vehicle had a long-range and was safe." (*Id.* at ¶ 91.)

In October 2017, the National Highway Traffic Safety Administration ("NHTSA") "published a warning that overcharging lithium ion batteries, such as the battery in the Bolt, can result in spontaneous ignition." (*Id.* at ¶ 22.) In November 2017 and April 2018, GM created repair programs for the Bolt in response to "issues with low voltage batteries" and "to update the vehicle's software for a low voltage condition and reports of vehicles losing propulsion." (*Id.* at ¶¶ 23–24.) In August 2018, GM "created another program related to the battery's software and its ability to monitor the charge of the battery." (*Id.* at ¶ 26.)

In March 2019, GM became aware of the first battery fire involving the Bolt. (*Id.* at ¶ 27.) Despite GM's knowledge of the fire risk posed by charging the battery to full capacity, later that year, in October 2019, GM held an event to address questions regarding the Bolt, and one of its employees and Bolt battery expert, Adam Piper, stated the following on behalf of GM: "We engineered the battery system so that you can charge to 100% and maximize range. Do whatever is best for your personal circumstances. If you want maximum range, charge to 100%." (*Id.* at ¶ 28.) These alleged events "occurred prior to plaintiff's purchase of the subject vehicle" and evidence GM's knowledge of the defect in the Bolt battery. (*Id.* at ¶ 27.) Yet, GM did not "disclose the battery issues to plaintiff or alter its marketing campaign" for the Bolt. (*Id.*) GM

"also created a marketing brochure for the 2020 Chevrolet Bolt," which was allegedly reviewed and relied upon by plaintiff prior to his purchase of the subject vehicle on May 21, 2022.[1]  (*Id.* at ¶ 29.)  The marketing materials for the 2020 Bolt pictured the vehicle as capable of being charged indoors in a garage.  (*Id.* at ¶ 30.)

On an unspecified date in 2021, GM issued a recall notice for the Bolt, "stating that its batteries may ignite when nearing a full charge."  (*Id.* at ¶ 32.)  Through this recall, GM "warned plaintiff that the vehicle's charge should not exceed 90%, the battery mileage should not fall below seventy (70) miles remaining, and the vehicle should not be parked indoors overnight."  (*Id.*)  Oddly, even though plaintiff had not yet purchased the subject vehicle at the time of this 2021 recall, plaintiff alleges that "once the recall was issued, [he] was not able to charge her [sic] vehicle's battery to full capacity."  (*Id.* at ¶ 31.)

According to plaintiff, GM "falsely represented that the subject vehicle is safe and functional for normal use," but it "is not safe of functional because the batteries may ignite when they are either fully charged or fall below seventy (70) miles remaining mileage," and "[t]he vehicle also cannot be parked inside overnight due to fire risk."  (*Id.* at ¶ 17.)  Further, the alleged affirmative misrepresentations and fraudulent omissions by defendant caused plaintiff to suffer injury in the form of anxiety, fear, and emotional distress.  (*Id.* at ¶¶ 43, 47, 104.)

In his complaint, plaintiff brings five claims against defendant under California law:  three claims of breach of warranties in violation of the Song-Beverly Consumer Warranty Act, a claim of common law fraud, and a claim under California's Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq.* ("UCL").  (Doc. No. 1-1 at 2.)

On June 5, 2024, defendant filed the pending motion to dismiss only plaintiff's fourth claim (fraud) and fifth claim (UCL).  (Doc. No. 6.)  Defendant also concurrently filed a request for judicial notice of information posted on the website of the United States Environmental

/////

/////

---

[1] Plaintiff alleges in his complaint that he reviewed a marketing brochure for the *2020* Bolt, even though plaintiff purchased a *2022* Bolt.  (Doc. No. 1-1 at 7, at ¶ 29.)

1  Protection Agency ("EPA"), specifically that the "EPA determined that 2020–2022 model-year
2  Chevrolet Bolts have an estimated total range of 259 miles."[2] (Doc. No. 7.)
3      Plaintiff filed an opposition to the pending motion on June 19, 2024. (Doc. No. 9.).
4  Defendant filed its reply thereto on June 26, 2024. (Doc. No. 10.)

**LEGAL STANDARD**

**A.    Motion to Dismiss Under Rule 12(b)(6)**

    The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers

---

[2] Plaintiff does not oppose defendant's request for judicial notice or contest the authenticity of the EPA website. Because "[t]he records and reports of administrative bodies, such as the EPA, 'are proper subjects of judicial notice, as long as their authenticity or accuracy is not disputed,'" the court will grant defendant's request for judicial notice. *AECOM Energy & Constr., Inc. v. Ripley*, No. 17-cv-5398-RSWL-SS, 2019 WL 2610953, at *3 (C.D. Cal. Apr. 24, 2019) (citation omitted); *see also Epperson v. Gen. Motors, LLC*, No. 3:23-cv-01554-W-AHG, 2023 WL 8628327, at *3 (S.D. Cal. Dec. 13, 2023) (granting a request and "tak[ing] judicial notice that the EPA's range mileage estimate for the 2020 Chevrolet Bolt is 259 miles").

mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d. 668, 688–89 (9th Cir. 2001).

**B.     Heightened Pleading Standard Under Rule 9(b)**

"When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Under Rule 9(b), the "circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of its particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). To satisfy the particularity standard of Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quotations omitted) (quoting *Davidson v. Kimberley-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). However, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021) (quoting Fed. R. Civ. P. 9(b)); *see also Klaehn v. Cali Bamboo LLC*, No. 21-

/////

55738, 2022 WL 1830685, at *2 (9th Cir. 2022)[3] ("Under Fed. R. Civ. P. 9(b), a plaintiff must plead circumstances from which a court can plausibly infer the defendant's knowledge.").

## ANALYSIS

In the pending motion, defendant argues that plaintiff has failed to state cognizable fraud and UCL claims because his allegations are deficient for several reasons.  (Doc. No. 6.)  As for the fraud claim and the "fraudulent" prong of the UCL claim, defendant contends that:  (i) plaintiff's allegations of fraud lack the requisite specificity of "how, when, where, to whom, and by what means the alleged fraud occurred"; (ii) "plaintiff fails to allege facts plausibly showing that GM knew of and intentionally misrepresented or concealed any material facts before plaintiff bought the vehicle"; (iii) plaintiff's allegation that GM issued a letter, after plaintiff's purchase, indicating that GM would replace plaintiff's car battery cannot support a fraud claim based on GM's pre-purchase awareness of the alleged defect; (iv) "[a]ny allegation that GM did not replace plaintiff's battery is a post-transaction failure to conform the vehicle to its warranty," and "cannot be a basis for the fraud claims;" (v) plaintiff's allegations that GM advertised EPA mileage estimates cannot form the basis of a misrepresentation claim as a matter of law; (vi) plaintiff does not sufficiently allege a transactional relationship with GM that would trigger a duty to disclose; and (vii) plaintiff's fraudulent concealment claim is barred by the economic loss rule.  (*Id.* at 7–8.)  As for plaintiff's UCL claim, defendant argues that this claim fails because plaintiff has not alleged "that there is no adequate remedy at law available for his past harms," and therefore has not established equitable jurisdiction as required for his UCL claim.  (*Id.* at 20–21.)  In addition, specifically as to the "unfair" prong of the UCL claim, defendant argues that this claim fails because plaintiff "does not cite any established public policy that GM's actions had violated or claim that the conduct is immoral, unethical, oppressive, or unscrupulous."  (*Id.* at 20.)

Plaintiff's opposition brief is largely unhelpful and does not address the vast majority of the arguments advanced by defendant in its motion to dismiss.  Apart from a single page of perfunctory legal argument regarding the existence of a transactional relationship and the

---

[3] Citation to the unpublished Ninth Circuit opinions such as those cited here and elsewhere in this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

economic loss rule, plaintiff's opposition brief merely provides a brief summary of plaintiff's allegations (without any citations to paragraphs in the complaint) and recites the applicable legal standard for Rule 12(b)(6) motions.[4] (Doc. No. 9.) Indeed, by his silence, plaintiff appears to concede the merits of the bulk of defendant's arguments. *See Lopez v. County of Los Angeles*, No. 3:15-cv-03804-I, 2016 WL 54123, at *2 (N.D. Cal. 2016) ("[B]ecause Plaintiff failed to oppose many arguments in the instant motion to dismiss, the Court may treat such non-opposition as implicit consent to the merits of the arguments asserted, and consequently as consent to dismissal of the Complaint."); *Lou v. JP Morgan Chase Bank N.A.*, No. 3:17-cv-04157-WHO, 2018 WL 1070598, at *2 (N.D. Cal. Feb. 26, 2018) ("Courts have found that a failure to oppose an argument serves as a concession.").

Nonetheless, the court will proceed to analyze whether plaintiff has sufficiently alleged cognizable fraud and UCL claims.

**A.     Plaintiff's Fraud Claim**

Under California law, "[t]he elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (citing *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996)). To state a cognizable fraud claim, a plaintiff must allege facts satisfying these elements with the requisite particularity and specificity of Rule 9(b). *See Moore*, 966 F.3d at 1019; *Kearns*, 567 F.3d at 1124.

Plaintiff's fraud claim is based on two separate theories as to the first element: affirmative misrepresentation and fraudulent concealment. (Doc. No. 1-1 at 13–14.) As noted above,

---

[4] The court pauses to note that plaintiff's opposition brief in this case is materially identical to the opposition brief filed by plaintiff's counsel on behalf of the plaintiffs in *Condrashoff et al. v. General Motors LLC*, 2:24-cv-00108-DAD-DB. Given that the undersigned rejected the *Condrashoff* plaintiffs' unsupported, bare-bones arguments in an order dismissing their fraud claims on May 23, 2024, *Condrashoff v. Gen. Motors LLC*, No. 2:24-cv-00108-DAD-DB, 2024 WL 2399645 (E.D. Cal. May 23, 2024), it is perplexing that plaintiff's counsel has filed essentially the same opposition brief on behalf of plaintiff in this action. Counsel's decision to proceed in this fashion suggests a lack of respect and appreciation for this court's limited resources.

7

1 defendant moves to dismiss this claim, arguing that plaintiff's allegations are insufficient to state
2 a cognizable fraud claim under either theory. (Doc. No. 6.) Because the court agrees that
3 plaintiff has not sufficiently alleged facts that would satisfy the first element of his fraud claim,
4 the court will dismiss this claim on that basis and will not address defendant's arguments
5 regarding the other elements.

    1.  <u>Affirmative Misrepresentation</u>

To support his affirmative misrepresentation theory of fraud, plaintiff alleges that GM marketed on its website and in advertisements that the Bolt "had a long range and was safe," and these marketing statements "were echoed by GM's dealership personnel at the time of sale who assured plaintiff that the vehicle had a long range and was safe." (Doc. No. 1-1 at 16, ¶ 91.) Plaintiff alleges that GM's "representations were false because the vehicle in fact contains a lithium-ion battery that causes the vehicle to overheat during prolonged use, resulting in a substantial reduction in the range capability of the vehicle." (*Id.* at ¶ 92.)

Plaintiff's allegations in this regard are plainly insufficient under the heightened pleading standard of Rule 9(b), which "requires the pleader of fraud to 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:15-MD-02672-CRB-JSC, 2019 WL 4581340, at *5 (N.D. Cal. Sept. 20, 2019) (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (en banc)). For example, a plaintiff alleging affirmative misrepresentations in marketing and advertising must "specify what the television advertisements or other sales material specifically stated," "when he was exposed to them and which ones he found material." *Kearns*, 567 F.3d at 1126 (affirming the district court's dismissal of a fraud claim where the plaintiff "failed to articulate the who, what, when, where, and how of the misconduct alleged," and thus "failed to plead his averments of fraud with particularity"). In his complaint, plaintiff has failed to plead any such specifics with regard to the alleged misrepresentations by defendant. Plaintiff's allegation that "defendant's mileage range advertisements were part of an extensive advertising campaign, and plaintiff was exposed to the advertisements" (Doc. No. 1-1 at 16, ¶ 94), is not sufficiently specific to satisfy Rule 9(b)'s

pleading standard. *See also In re Volkswagen "Clean Diesel" Mktg.*, 2019 WL 4581340, at *5–6 (dismissing a fraud claim brought against Volkswagen because the "plaintiffs have not identified the time and place of Volkswagen's representations to them," "plaintiffs have not adequately identified the parties to the representations," "plaintiffs have not identified which of [Volkswagen's] advertisements they were exposed to and found material," and "[g]eneral allegations about Volkswagen's media campaign are not sufficient to support plaintiffs' misrepresentation claims"). Moreover, plaintiff's allegations of statements made by Adam Piper regarding charging the Bolt battery to 100% are insufficient to save his fraud claim because, as defendant emphasizes in its motion and which plaintiff wholly ignores in his opposition, plaintiff's allegations are "devoid of any clarification as to whom Mr. Piper said this to, whether plaintiff heard this statement, and whether plaintiff relied on it." (Doc. No. 6 at 13.)

In addition, to the extent plaintiff intends to allege that defendant's affirmative misrepresentations consisted of GM's marketing and advertising of the Bolt's mileage range of over 200 miles on a full battery, those allegations cannot support a fraud claim as a matter of law. *See Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608, 609 (9th Cir. 2014) ("When applied to the fuel economy context, '[a]s a matter of law, there is nothing false or misleading' about a car manufacturer's advertising that identifies the EPA fuel economy estimates for the car. Thus, no misrepresentation occurs when a manufacturer merely advertises EPA estimates.") (quoting *Paduano v. Am. Honda Motor Co.,* 169 Cal. App. 4th 1453, 1470 (2009)). Indeed, other courts, including this court, have specifically considered GM's representations with regard to fuel economy and mileage range based on EPA estimates for the same vehicle at issue in this case (the Bolt) and have found such allegations to be insufficient to support the plaintiffs' fraud claims as a matter of law. *See In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 960 (E.D. Mich. 2022) (dismissing the affirmative misrepresentation-based fraud claim even though the plaintiffs had identified "several statements by GM about the Bolt's range: several pre-release statements that the Bolt was 'designed to offer more than 200 miles of range,'" and explaining that "[o]nly where a manufacturer makes specific additional representations that go beyond those EPA estimates are statements of fuel efficiency and range actionable") (citation and internal quotation

marks omitted); *see also Kuehl v. Gen. Motors LLC*, No. 2:23-cv-06980-SB-SK, 2023 WL 8353784, at *2 (C.D. Cal. Nov. 17, 2023) ("GM's marketing of the Bolt's 259-mile range is [] not a misrepresentation as a matter of law."); *McDonald v. Gen. Motors LLC*, No. 23-cv-1584-KK-DFM, 2024 WL 1601844, at *5 (C.D. Cal. Feb. 23, 2024) ("Plaintiff has failed to adequately plead an affirmative misrepresentation claim to the extent it is predicated upon alleged misrepresentations regarding the [Bolt's] battery capacity."); *Antonov v. Gen. Motors LLC*, No. 8:23-cv-01593-FWS-MJR, 2024 WL 217825, at *7–8 (C.D. Cal. Jan. 19, 2024) (dismissing the plaintiff's affirmative misrepresentation-based fraud claim regarding GM's mileage advertisements for the Bolt); *Condrashoff v. Gen. Motors LLC*, No. 2:24-cv-00108-DAD-DB, 2024 WL 2399645, at *5 (E.D. Cal. May 23, 2024) (same).

For these reasons, defendant's motion to dismiss plaintiff's fraud claim based on a theory of affirmative misrepresentations will be granted.

   2. <u>Fraudulent Concealment</u>

"A fraud claim based upon the suppression or concealment of a material fact must involve a defendant who had a legal duty to disclose the fact." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014). In other words, "[a] fraud claim based on concealment is actionable only if there is a duty to disclose." *Kuehl*, 2023 WL 8353784, at *3.

> Under California law, a duty to disclose may arise where: (1) "the defendant is the plaintiff's fiduciary;" (2) "the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff;" (3) "the defendant actively conceals a material fact from the plaintiff;" or (4) "the defendant makes partial representations that are misleading because some other material fact has not been disclosed."

*Antonov*, 2024 WL 217825, at *10 (quoting *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011)).

In his complaint, plaintiff merely recites the second, third, and fourth circumstances under which a duty to disclose may arise and alleges in conclusory fashion that defendant had a duty to disclose that the Bolt's battery was unsafe at the time of his purchase. (*See* Doc. No. 1-1 at 17, ¶ 100.) Such "threadbare recitals" of the requisite elements, "supported by mere conclusory statements, do not suffice." *See Iqbal*, 556 U.S. at 676; *see also Antonov*, 2024 WL 217825, at

10

\*10 (finding that the plaintiff's "allegations are merely '[t]hreadbare recitals' of circumstances in which the duty to disclose can arise under California law that are otherwise unsupported by specific facts and thus insufficient to demonstrate a duty to disclose"). Plaintiff has therefore failed to plead his fraudulent concealment claim with sufficient particularity, even under the more relaxed pleading standard that applies to omission-based fraud claims. *See Tappana v. Am. Honda Motor Co.*, 609 F. Supp. 3d 1078, 1088 (C.D. Cal. 2022) (explaining that to plead a cognizable claim based on fraud by omission, the plaintiff "must both describe the content of the omission and where the omitted information should or could have been revealed").

Accordingly, the court will also grant defendant's motion to dismiss plaintiff's fraud claim based on a theory of fraudulent concealment.

**B.      Plaintiff's UCL Claim**

California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200, *et seq*. "The UCL is a broad remedial statute that permits an individual to challenge wrongful business conduct 'in whatever context such activity might occur.'" *Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 731 (9th Cir. 2007) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.,* 20 Cal. 4th 163, 181 (1999)). Here, plaintiff alleges that defendant's conduct violated all three prongs of the UCL. (Doc. No. 1-1 at 18–21.) In moving to dismiss this cause of action, defendant argues that plaintiff has not adequately alleged his UCL claim under any prong. (Doc. No. 6 at 20–21.)

1.      "Fraudulent" Prong

To plead a UCL claim predicated on a defendant's allegedly fraudulent business practices, a plaintiff must "state with particularity the circumstances constituting fraud" in support of the claim. *See Kearns*, 567 F.3d at 1124 (quoting Fed. R. Civ. P. 9(b)); *Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir. 1987) ("[A] pleading satisfies the particularity requirement [of Rule 9(b)] if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.").

For the same reasons discussed above regarding plaintiff's failure to sufficiently allege his fraud claim with particularity, plaintiff has likewise failed to sufficiently allege a UCL claim

11

1    predicated on a fraudulent business practice.  *See McDonald*, 2024 WL 1601851, at *6 ("Because

2    Plaintiff's entire UCL claim is grounded in fraud but does not adhere to the particularity standard

3    of Rule 9(b), Plaintiff has failed to adequately plead her UCL claim."); *Antonov*, 2024 WL

4    217825, at *12 ("Because Plaintiff's claim for a violation of the UCL's 'fraudulent prong' relies

5    on the same theories of fraudulent misrepresentation and fraudulent concealment that the court

6    found to be insufficient [], the court concludes Plaintiff has also failed to allege a violation of the

7    'fraudulent prong' of the UCL.")

8          Accordingly, the court will also grant defendant's motion to dismiss plaintiff's UCL claim

9    based on the "fraudulent" prong.

10         2.    "Unfair" Prong

11         Whether conduct is unfair can be determined by application of a balancing test, whereby

12   the court balances the impact of a business practice on its alleged victim against the "reasons,

13   justifications, and motives of the alleged wrongdoer."  *S. Bay Chevrolet v. Gen. Motors*

14   *Acceptance Corp.,* 72 Cal. App. 4th 861, 886 (1999).  In conducting this balancing courts look for

15   whether the harm to the consumer is outweighed by the utility of the defendant's practice.

16   *Lozano*, 504 F.3d at 735–36.

17         In his complaint, plaintiff alleges that "defendant's action of using a defective battery in

18   the vehicle causes injuries to consumers, like plaintiff" because they cannot use or park their

19   vehicle as advertised.  (Doc. No. 1-1 at 19, ¶¶ 110–11.)  But plaintiff does not allege that he has

20   personally suffered any injury with regard to his vehicle.  Indeed, these same allegations have

21   already been found by this court and another court to be insufficient to state a cognizable UCL

22   claim under the "unfair" prong against GM relating to its Bolt advertisements.  *See Rodrigues v.*

23   *Gen. Motors LLC*, No. 23-cv-04488-WHA, 2023 WL 8852740, at *5 (N.D. Cal. Dec. 21, 2023)

24   (dismissing UCL claim and noting that "no injury to plaintiffs on account of their vehicle has

25   even been alleged here — and certainly not an ongoing one"); *Condrashoff*, 2024 WL 2399645,

26   at *7.

27         In addition, the conduct by GM that plaintiff alleges was unfair is actually "coextensive"

28   with the conduct that underlies plaintiff's fraud claims.  As a result, plaintiff's UCL claim under

the "unfair" prong is subject to the heightened pleading standard of Rule 9(b), which plaintiff has failed to satisfy. *See In re Intel Corp. CPU Mktg., Sales Prac. And Prod. Liab. Litig.*, 2023 WL 7211394, at *2 (9th Cir. Nov. 2, 2023) (affirming a district court's dismissal of the plaintiffs' UCL unfair conduct claim because the plaintiffs' allegations "were coextensive with those of the previously dismissed omission-based claims"). For this reason, this court and another district court has dismissed a UCL "unfair" prong claim based on the same allegations that plaintiff has advanced in this case. *See McDonald*, 2024 WL 1601851, at *5–6 (dismissing the UCL claim and explaining that "plaintiff's entire UCL claim is grounded in fraud because it relies on the theory that Defendant engaged in fraudulent conduct by knowingly misrepresenting the Bolt as safe and a "leading electric vehicle" while failing to disclose its "serious safety concerns," and "plaintiff's claim, thus, concerns a 'unified course of fraudulent conduct'") (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003)); *Condrashoff*, 2024 WL 2399645, at *7 (same).[5]

For these reasons, defendant's motion to dismiss plaintiff's UCL claim brought under the "unfair" prong will be granted.

       3.      <u>"Unlawful" Prong</u>

"By proscribing any unlawful business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech,* 20 Cal. 4th at 180 (citation and internal quotation marks omitted). "Virtually any law—federal, state or local—can serve as a predicate for an action under [the UCL]." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001). However, "[w]here a plaintiff cannot state a claim under the 'borrowed' law, he cannot state a UCL claim either." *Dawson v. HITCO Carbon Composites, Inc.*, No. 16-cv-7337-PSG-FFM, 2017 WL 7806618, at *8 (C.D. Cal. Jan. 20, 2017).

/////

---

[5] As the court previously noted, plaintiff's counsel in this action is the same counsel of record for the plaintiffs in *McDonald* and *Condrashoff*, and counsel employed the same boilerplate allegations in both complaints, as well as numerous other complaints in which counsel represents individuals in lawsuits brought against GM regarding the Bolt vehicle.

13

As a preliminary matter, plaintiff does not identify any predicate law that is borrowed to support his UCL claim under the "unlawful" prong.  While not entirely clear, to the extent plaintiff intends for his UCL claim to borrow from his insufficiently alleged fraud claims, his UCL claim under the "unlawful" prong clearly fails. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) ("A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim.").  To the extent plaintiff intends for his UCL claim to borrow from his claim of breach of express warranties in violation of the Song-Beverly Act, that too fails. *See Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 859 (N.D. Cal. 2012) (dismissing the plaintiff's UCL claim to the extent that it was predicated on violations of express warranties because "an alleged breach of a warranty—a contract—'is not itself an unlawful act for purposes of the UCL'") (quoting *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010)).  "An act that breaches a contract may also breach the UCL, but only when the act is unfair, unlawful of fraudulent for some additional reason." *Boland*, 685 F. Supp. 2d at 1110.  However, to the extent plaintiff intends for his UCL "unlawful prong" claim to be predicated on his claim of breach of *implied* warranties in violation of the Song-Beverly Act, that alleged violation could serve as a predicate for his UCL claim. *See Elias v. Hewlett-Packard Co.*, No. 12-cv-00421-LHK, 2014 WL 493034, at *11, n.12 (N.D. Cal. Feb. 5, 2014) (distinguishing between express warranty claims and implied warranty claims under the Song-Beverly Act in determining whether the alleged violation can be borrowed for the UCL "unlawful" prong).  Thus, plaintiff's UCL "unlawful" prong claim is subject to dismissal to the extent that claim is based on his fraud and express warranty claims.

As for plaintiff's UCL "unlawful" prong claim predicated on plaintiff's implied warranty claim, defendant argues in its motion to dismiss that this claim also fails because plaintiff has not sufficiently established that this court has equitable jurisdiction to entertain his claim. (Doc. No. 6 at 20.)  The court agrees.  As one district court has explained:

/////

/////

/////

14

> Apart from civil penalties, which are not at issue here,[6] the UCL provides only equitable remedies. *See Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1144 (2003); *Madrid v. Perot Systems Corp.,* 130 Cal. App. 4th 440, 452 (2005). A plaintiff seeking equitable relief must establish that there is no adequate remedy at law available. *See Knox v. Phoenix Leasing, Inc.,* 29 Cal. App. 4th 1357, 1368 (1994). Thus, statutory relief under the UCL "is subject to fundamental equitable principles, including inadequacy of the legal remedy." *Prudential Home Mortg. Co. v. Superior Court,* 66 Cal. App. 4th 1236, 1249 (1998). Because the UCL provides for only equitable remedies, and plaintiffs have an adequate remedy at law for the alleged Song–Beverly Act violation, plaintiff's UCL claim must be dismissed. *See Rynes v. Striker,* 2011 WL 2149095 at *3 (N.D. Cal. May 31, 2011).

*Durkee v. Ford Motor Co.*, No. 14-cv-0617-PJH, 2014 WL 4352184, at *2–3 (N.D. Cal. Sept. 2, 2014). Here, plaintiff has not alleged that he has no adequate remedy at law. Indeed, plaintiff specifically seeks remedies under the Song-Beverly Act. Thus, defendant's motion to dismiss plaintiff's UCL claim will also be dismissed.

**C.    Leave to Amend**

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

Plaintiff does not request that the court grant him leave to amend his complaint. It appears clear that plaintiff's decision to not request leave to amend was not an oversight. As defendant emphasizes in its motion, plaintiff's counsel has represented to courts in other actions in which he

---

[6] Plaintiff seeks relief in the form of restitution in connection with his UCL claim. (Doc. No. 1-1 at 22 ¶ 142.) Civil penalties under the UCL may only be recovered by public law enforcement officials; civil penalties are not available to private litigants. Cal. Bus. & Prof. Code § 17206.

has appeared on behalf of plaintiffs suing GM—based on the same allegations regarding the Bolt that are alleged in this action—that leave to amend is not requested. (*See* Doc. No. 6-3 at 4–7) (*Nieuwboer v. General Motors, LLC*, 24-cv-229-VC, Transcript of Proceedings, (N.D. Cal. Feb. 21, 2024) (explaining to plaintiff's counsel that he should inform the courts that he has taken his best shot and is not seeking leave to amend in order to "spare them the work of deciding whether to give [him] leave to amend"). For these reasons, the court will grant defendant's motion to dismiss plaintiff's fourth and fifth claims without leave to amend.

## CONCLUSION

For the reasons explained above,

1. Defendant's request for judicial notice (Doc. No. 7) is granted;
2. Defendant's motion to dismiss (Doc. No. 6) is granted;
    a. Plaintiff's fourth cause of action of common law fraud is dismissed, without leave to amend; and
    b. Plaintiff's fifth cause of action of a violation of the UCL is dismissed, without leave to amend;
3. Defendant shall file an answer to plaintiff's complaint as to the remaining claims by no later than twenty-one (21) days from the date of entry of this order; and
4. By separate order, the court will set this case for an initial scheduling conference, which will include the setting of a deadline for the parties to file a joint status report regarding scheduling.

IT IS SO ORDERED.

Dated: **July 31, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE